**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **FIRST SOLAR ELECTRIC, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO: _____** |
| | ) | |
| **ZURICH AMERICAN** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Zurich.** | ) | |

## COMPLAINT

Plaintiff First Solar Electric, LLC (hereinafter or "First Solar") for its complaint against Zurich American Insurance Company ("Zurich") states as follows:

### NATURE OF THE CASE AND INTRODUCTION

1.     This is a commercial builders risk insurance coverage dispute relating to this 2,000+ acre solar project (depicted as completed) on New Hope Road in Twiggs County, Georgia ("Twiggs Project"):



00439396

2.     Zurich issued an all-risk Master Builder's Risk Policy (the "Policy") and project specific certificate for the Twiggs Project to cover risk of loss and damage during construction.

3.     Starting in December of 2019 and through April of 2020, serial heavy rain events in record amounts caused significant water damage (e.g., damage to civil engineering elements such as roads and berms) to the Twiggs Project during construction.  The water causing that damage did not flow onto the project site from a river, creek, or reservoir.  It came from the sky in torrential amounts, saturated the clay and sandy soils, and caused major structural damage to the site and civil engineering elements of the Twiggs Project.

4.     First Solar held the reasonable expectation that it would be covered for that damage under the Policy and that Zurich would investigate and then pay consistent with the Policy and its handling of other similar claims.  Zurich paid an advance of $600,000 and led First Solar to believe it was investigating the damage for more than one year and into the first months of 2021, only to ultimately deny any further obligation under the Policy by letter delivered from Zurich's lawyer in March of 2021.

5.     The crux of the dispute relates to which policy deductible (FLOOD* or WATER DAMAGE*) applies to the damage from the heavy rains.

6.     The Policy defines WATER DAMAGE* as follows:

---

**26.  WATER DAMAGE**
All damage caused by water, whatever the source, whether or not driven by wind, other than that otherwise defined as **FLOOD\*** or that resulting from a **NAMED STORM\***.

---

7.     The Policy defines FLOOD* as follows:

8.   FLOOD
     FLOOD* means:
     A.   A general and temporary condition of partial or complete inundation of normally dry land areas, including dewatered areas, from:
          (1)   The rising, overflow, or expansion beyond normal boundaries of any body of water or watercourse, whether such body of water or watercourse is natural or man made;
          (2)   The release or breaking of the boundaries of natural or man-made bodies of water or watercourses including the release or overflow of any water impounded by a dam, dike, reservoir or any other barrier or diversionary device;
          (3)   Tsunami, waves, tide or tidal waters, and storm surge;
          (4)   The unusual and rapid accumulation or runoff of surface waters from any source;
          (5)   Mudslides or mudflows where mudslide or mudflows means a river of liquid and flowing mud on the surfaces of normally dry land areas, as when earth is carried by a current of water and deposited along the path of the current;
          or the spray from any of the foregoing, whether driven by wind or not.
     B.   Direct physical loss or damage by fire or explosion resulting from Flood as defined above, will not be considered loss by Flood within the terms and conditions of this policy.

8.      Zurich seeks to apply a FLOOD* deductible of $2,500,000 and claims that it owes First Solar nothing further for the heavy rain damage on the Twiggs Project.  More specifically, Zurich incorrectly maintains that the losses at issue were caused by "surface waters," a term in the Policy's definition of FLOOD*.

9.      First Solar maintains that a $100,000 deductible for WATER DAMAGE* should apply such that Zurich owes more than $13,000,000 in unpaid policy benefits plus extracontractual damages.

10.     Zurich knows its FLOOD* v. WATER DAMAGE* position is wrong for several reasons, including these:

        •       Zurich determined during underwriting that the project site (the property impacted by heavy rains and resulting water damage in 2019 and 2020) is located in FEMA Flood Zone X, unshaded, which the Policy defines as a low flood risk requiring only a $100,000 deductible.  Zurich either mistakenly applied a higher deductible to the Twiggs Project or did so only because of the risk of flooding from Flat Creek, a body of water that runs adjacent to the project.  Zurich's FLOOD* rate and corresponding deductible are not based on the risk of damage from heavy rains.

        •       The Policy and the Twiggs Project certificate carry full insured value limits ($185,698,724 for the Twiggs Project) for WATER DAMAGE*, which the Policy broadly defines as all damage caused by

water that does not fall within the definition of FLOOD* or NAMED STORM*.  Zurich charged and accepted payment of a $264,435 project premium that included that coverage for WATER DAMAGE*.  If damage from heavy rains (i.e., the only other significant water risk beyond FLOOD* or NAMED STORM*) is not WATER DAMAGE*, then First Solar received nothing for its premium payments.

•      Zurich treated other claims for damage from heavy rains under the Policy and, on information and belief, other policies, as WATER DAMAGE*, not FLOOD*.

•      Consistent with First Solar's position, Zurich advanced $600,000 for the Twiggs Project claims, treating them as WATER DAMAGE* claims.

•      Zurich's own documents and marketing materials beyond the Policy confirm the difference between FLOOD* damage and loss from heavy rains and resulting water damage.

11.      Despite this knowledge and the lack of any evidence of damage because of water from Flat Creek, the FLOOD* risk identified by Zurich during underwriting, Zurich remains unwilling to withdraw its position.

12.      Zurich knows First Solar's losses were undeniably caused by heavy rain and should be subject to the higher limit and lower deductible for WATER DAMAGE* as a result.  Put simply, the FLOOD* risk Zurich insured for the Twiggs Project was damage **from** Flat Creek, not water from the sky.  First Solar seeks coverage for a different risk:  damage that would not exist but for torrential rainstorms.

13.      There is also dispute over whether there is more than one OCCURRENCE as that term is uniquely defined in the Policy.

14.      Upon notice of Zurich's final position in March of 2021, First Solar initiated the alternative dispute resolution provision of the Policy. The parties completed an unsuccessful mediation in October.  First Solar now seeks relief from this Court as more specifically set forth below.

## THE PARTIES

15.     Plaintiff First Solar is a limited liability company, whose sole member is a Delaware corporation with its principal place of business in Tempe, Arizona. First Solar's affiliated companies manufacture solar photovoltaic ("PV") modules, and First Solar has also served as developer of utility-scale solar PV plants. First Solar has also provided engineering, procurement, and construction ("EPC"), and operations and maintenance services to utility-scale solar PV plants.

16.     Upon information and belief, Zurich is a New York Corporation with its principal place of business in Schaumburg, Illinois. Zurich may be served through its registered agent, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Gwinnett County, Georgia 30092.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction under 28 U.S.C. § 1332 as the parties are diverse and the amount-in-controversy exceeds $75,000.

18.     Zurich is subject to personal jurisdiction in Georgia.  Zurich conducts business in Georgia, including issuing the certificate of insurance providing insurance for this project in Twiggs County, Georgia.

19.     Venue is appropriate in this district under 28 U.S.C. § 1391 as the insurance certificate for the Twiggs Project was issued to cover property damage in this district.

## THE POLICY

20.      In 2017,  First Solar, Inc., First Solar's parent company, purchased the Policy from Zurich to protect against risks of loss during construction of various solar projects.  The Policy is

numbered MBR 6552391-03.  A true and correct copy of the Policy is attached hereto as ***Exhibit "A"***.

      21.     The Policy is an all-risks policy and states as follows:

> **1.   INSURING AGREEMENT**
>
>     **A.   Coverage**
>
>       This Master Policy, its quarterly reports and all Project Certificates issued hereunder, subject to the terms, exclusions, limitations and conditions contained herein or endorsed hereto, insures against all risks of direct physical loss of or damage to Covered Property while at the location of the **INSURED PROJECT**\* and occurring during the Policy or Certificate Term.

      22.     Unlike some property insurance policies, the Policy includes coverage for risk of loss due to water.  Zurich charged and received substantial premiums for this coverage.  The Policy addresses this risk by separating different types of risk of loss by water, including: FLOOD\*, NAMED STORM\*, and WATER DAMAGE\*.

      23.     FLOOD\* is specifically defined as set forth above in Paragraph 7.  The Policy's definition of FLOOD\* expressly states that the contemplated "condition of … inundation" must come "from" one of five (5) enumerated sources.  Neither the sky nor rain is listed among those enumerated sources.

      24.     The Policy defines NAMED STORM\* as follows:

> **13.   NAMED STORM**
>
> **NAMED STORM**\* means wind, wind gusts, hail, rain, tornadoes, or cyclones caused by or resulting from a specific storm system that has been named by the National Hurricane Center (NHC) or the Central Pacific Hurricane Center (CPHC) or any comparable worldwide equivalent beginning when such organization issues a watch or warning and ending 72 hours after the termination of the watch or warning; however, **NAMED STORM**\* does not include loss or damage caused by **FLOOD**\* related to or resulting from a **NAMED STORM**\*.

      25.     Even though this dispute does not involve damage from a NAMED STORM\*, that definition is significant because it differentiates between rain and FLOOD\*.  If damage caused by rain was intended to be included in the policy's definition of FLOOD\*, that differentiation in the definition of NAMED STORM\* would make no sense.

26.     Finally, the Policy places all other damage from water into the catch all bucket of WATER DAMAGE*, specifically defined above in Paragraph 6.  If there is damage from water that does not qualify as FLOOD* or NAMED STORM* damage, that damage is WATER DAMAGE*.

27.     The Policy also contains a unique provision and definition of OCCURRENCE. With respect to the risk of WATER DAMAGE* (and other causes other than EARTHQUAKE*, FLOOD*, and NAMED STORM*), the Policy combines events by cause or series of causes, treating all losses or damage from one cause (i.e., heavy rains) as one OCCURRENCE:

---

**14.  OCCURRENCE**

With the exception of the perils of **EARTHQUAKE***, **FLOOD***, and **NAMED STORM***, **OCCURRENCE*** includes all losses or damages that are attributable directly or indirectly to one cause or a series of causes and includes all resultant or concomitant losses wherever located.  All such losses or damages will be treated as one occurrence.

As respects the peril of **EARTHQUAKE***, **OCCURRENCE*** shall mean all losses or damages arising during a continuous period of one hundred and sixty eight (168) hours during the term of this Policy.  The Insured may elect the moment when the one hundred and sixty eight (168) hour period begins, but no two such periods shall overlap.  Such **EARTHQUAKE*** shall be deemed to be a single **OCCURRENCE*** within the meaning of this Policy.

As respects the peril of **NAMED STORM***, **OCCURRENCE*** shall mean all losses or damages arising during a continuous period of seventy-two (72) hours during the term of this Policy.  The Insured may elect the moment when the seventy-two (72) hour period begins, but no two such periods shall overlap.  Such **NAMED STORM*** shall be deemed to be a single **OCCURRENCE*** within the meaning of this Policy.

As respects the peril of **FLOOD***, **OCCURRENCE*** shall mean all losses or damages arising during a continuous condition as defined in the definition of **FLOOD***.

The Company shall not be liable for any such loss or damage occurring before the effective date and time or occurring after the expiration date and time of this Policy.

---

### THE POLICY'S COVERAGE FOR THE TWIGGS PROJECT

28.     On September 26, 2018, First Solar and Twiggs County Solar, LLC entered into an EPC Agreement for First Solar to provide EPC services for the Twiggs Project on approximately 2185 acres at 32.59108°, -83.445652°, 819 New Hope Road, Dry Branch, Georgia.  The 2018 Press Release, attached as Exhibit "B", incorporated by reference, provides additional detail regarding the Twiggs Project.  Upon information and belief, the Twiggs Project is the largest

infrastructure project in Twiggs County, employing 300 or more citizens of Twiggs County during construction and continuing to generate significant tax revenue. *Id.*

29.     First Solar notified Zurich before construction that the Twiggs Project should be added to the Policy.  The Policy is further designed such that coverage for specific projects is governed by project certificates, issued by Zurich after a project specific risk assessment to determine premium rates, limits, sub-limits and deductibles.

30.     Zurich completed such an assessment for the Twiggs Project.  As to FLOOD*, Zurich determined that the Twiggs Project site was located in a FEMA Flood Zone X, unshaded. In accordance with the terms of the Policy, the Flood risk for the project site was Flood Level 3, subject to a $100,000 deductible:

**C.  FLOOD LEVELS*** are defined as follows:

| FLOOD LEVEL 1 - Special FLOOD* Hazard Areas – 100 Year FLOOD* | |
|---|---|
| Zone A | No base flood elevation determined. |
| Zone AE or A1-A30 | Base flood elevations determined. |
| Zone AH | Flood depths of 1 to 3 feet (usually areas of ponding); base flood elevations determined. |
| Zone AO | Flood depths of 1 to 3 feet (usually sheet flow on sloping terrain); average depths determined.  For areas of alluvial fan flooding, velocities also determined. |
| Zone A99 | To be protected from 100-year flood by Federal flood protection system under construction; no base elevations determined. |
| Zone V | Coastal flood with velocity hazard (wave action);  no base flood elevation determined. |
| Zone VE or V1-V30 | Coastal flood with velocity hazard (wave action);  base flood elevation determined. |
| Zone D | Areas in which Flood hazard is undetermined |
| | |
| FLOOD LEVEL 2 - Special FLOOD* Hazard Areas  - 500 Year FLOOD* | |
| Zone Shaded X or Zone B | Areas of 500-year flood; areas of 100-year flood with average depths of less than 1 foot or with drainage areas less than 1 square mile; and areas protected by levees from 100 year flood. |
| | |
| FLOOD LEVEL 3 - Others Areas | |
| Zone Unshaded X or Zone C | Areas determined to be outside 500-year flood plain. |
| | |
| US TERRITORIES AND POSSESSIONS<br>(Not Applicable to Contractor's Block, unless otherwise endorsed) | |
| All risks located within US territories & possessions and within the Commonwealth of Puerto Rico are subject to referral, unless otherwise endorsed. | |

| CATASTROPHE PERILS<br>Flood Deductibles | | | | |
|---|---|---|---|---|
| CATEGORY | CLASSIFICATION | FLOOD SUB-LIMIT | Annual Rate (per $100 of TOTAL PROJECT VALUE) | HARD COST / DSU DEDUCTIBLE (% / MINIMIM / MAXIMUM) |
| Flood | Within Flood Level 1 | <$10,000,000 | .0285 - .0475 | 2% / $250,000 / $1,000,000 / 30 days |
| | | UP TO $25,000,000 | .0285 - .0475 | 2% / $250,000 / $2,500,000 / 30 days |
| | | UP TO $50,000,000 | .0285 - .0475 | 2% / $250,000 / $5,000,000 / 30 days |
| | | ABOVE $50,000,000 | .0285 - .0475 | 2% / $250,000 / $5,000,000 / 30 days |
| | Within Flood Level 2 | ALL | 0.0285 | 2% / $100,000 / 30 days |
| | Within Flood Level 3 | ALL | Included | $100,000 / 30 days |
| | US Territories & Possessions and Puerto Rico & CANADA | ALL | Refer | Refer |

31.     Zurich issued a project certificate, certificate number: CRT 3446037-00 (the "Certificate"), for the Twiggs Project under the Policy.   A true and correct copy of the Certificate is attached hereto as **_Exhibit "C"_**.  First Solar is a named insured under the Policy as it is a subsidiary company owned or controlled by First Solar, Inc. and is identified as a Named Insured on the Certificate.

32.     The Certificate estimates the Total Project Value for the Twiggs Project at $185,698,724.

33.     The Deductible, per OCCURRENCE, for WATER DAMAGE* is $100,000.  The Aggregate Limit for WATER DAMAGE* is the Project Limit of $185,698,724.

34.     As to FLOOD*, Zurich set the deductible at Level 1 (2% (of completed value) with a minimum of $250,000 and a maximum of $2,500,000) instead of Level 3 ($100,000).  That rating was assigned related to a single specific risk, a high "River Flood" risk from Flat Creek, a body of water designated as Flood Zone A that runs adjacent to, but not through, the project site. Neither Zurich nor First Solar intended for the FLOOD* rating to relate to the risk of damage from heavy rains directly impacting the project site.  Alternatively, if Zurich intended for FLOOD* to encompass the risk of damage from heavy rains at the project site, the Policy requires a Level 3 FLOOD* rating and the Certificate contains a mistake that should be reformed.

**THE CLAIM**

35.     A series of heavy rain events occurred on December 13, 2019, February 5, 2020, February 13, 2020, March 3, 2020, and April 18, 2020.

36.     First Solar provided timely notice to Zurich of the series of rain events and damage from those rain events.  First Solar also cooperated in the claims process and has satisfied all applicable conditions under the Policy.

37.     The substantial rain events caused significant damage to civil engineering elements of the Twiggs Project including sediment deposit basins and berms, roads (including site access road), arrays, and drainage channels.

38.     The water causing this damage came first from the sky in the form of rain.  Contrary to Zurich's ultimate position, the water did not come from any enumerated condition listed in the definition of FLOOD*.  Nor did the water come from Flat Creek.

39.     To repair the damage, First Solar was required to rebuild and re-engineer the sediment deposit basins and berms and replace and install additional crush-and-run aggregate to damaged roads.  First Solar was also required to install rip-rap basins, silt fencing, and GreenArmor systems to repair water-damaged arrays.  First Solar also repaired channels to preserve the structural integrity of post foundations.

40.     First Solar timely submitted claim estimates totaling $13,403,576 for damages from the series of torrential rain events.

**CLAIM HANDLING PROCESS AND INVESTIGATION**

41.     On information and belief, Zurich assigned Scott Klaben to adjust the file.

42.     On July 11, 2020, Zurich issued payment totaling $600,000 as an advance on the claim and consistent with the determination that the claim was for WATER DAMAGE* and not a FLOOD* claim.  Copies of the checks are attached hereto as Exhibit "D".

43.     On August 4, 2020, Zurich sent a letter to First Solar indicating that it "continues to gather information for these claims and will continue to do so."

44.     On October 26, 2020, Zurich sent a letter to First Solar indicating its continued investigation of the claim and noted that "since the claim is still pending there may be additional requests in the future."

45.     On December 10, 2020, Zurich provided an "update as to the status regarding the claim and [its] ongoing review of the submitted damages/information" for the claims.  Zurich noted that information was still being reviewed and wouldn't be "finished till at least late next week at the earliest due to the complexity and amount of data."  Zurich noted that it would "continue to work on it and keep [First Solar] updated of [its] progress."

46.     On December 18, 2020, Zurich provided its "preliminary review regarding the deductibles."  This included preliminary "WORK IN PROGRESS" calculations from Madsen, Kneppers & Associates, Inc. ("MKA"), consultants retained by Zurich.

47.     Zurich continued to adjust the claim, with the help of MKA and sent updated calculations as late as February 8, 2021.

48.     First Solar repeatedly sought a position from Zurich and on March 15, 2021, Scott Klaben replied that they were "[s]till working on it."  This was more than a year after the claim was submitted and more than 8 months after Zurich made its initial $600,000 payment on the claim.

49.     First Solar understood throughout the claims process that Zurich was investigating and continuing to evaluate its position. This was an ongoing conversation for months between, perhaps among others, Scott Klaben of Zurich and John Shaw with Marsh Risk & Insurance Services ("Marsh"), the insurance broker involved in underwriting and processing the claims.

50.     Then, Zurich's lawyer sent a position letter on March 22, 2021 to John Shaw with Marsh.  Zurich's lawyer claimed that the claim was actually multiple OCCURRENCES* of FLOOD* and not WATER DAMAGE*.  Zurich's lawyer stated that no funds were due as  separate $2,500,000 deductibles apply.

51.     Zurich denied First Solar's claim based on a coverage limitation that it cannot prove, despite its burden to do so.  Zurich's lawyer's letter construes an undefined term, "surface waters," in favor of Zurich and contrary to Zurich's obligations and the points made in Paragraph 10, above.  Any reasonable investigation would have revealed that First Solar's claims related to damage from water that had nothing to do with water from Flat Creek, the sole basis for Zurich's FLOOD* deductible.

52.     First Solar promptly sent a demand for dispute resolution to Zurich under the Policy and ultimately agreed with Zurich to mediate.

53.     First Solar and Zurich participated in a mediation on October 7, 2021.  The dispute remains unresolved.

## ZURICH'S INCONSISTENT POSITIONS

54.     Zurich's response to First Solar's Twiggs claim is inconsistent with Zurich's own interpretations of its policy, the policy terms at issue, other Zurich documents, and its obligations under applicable law.

55.     In addition to early payments on the Twiggs claim, Zurich made payments to First Solar on other claims for other projects under the Policy (and its predecessor) that were consistent with First Solar's interpretation of the policy terms driving this dispute.

56.     On information and belief, Zurich also paid claims on other policies for other policyholders using First Solar's interpretation of WATER DAMAGE* and FLOOD*.

57.     Zurich's own documents during the underwriting process for the Twiggs Project further confirm that Zurich has changed its own interpretation of FLOOD* in the face of First Solar's claim.

58.     And as confirmed by the definition of NAMED STORM* in the Policy, there is a difference between damage caused by rain and damage caused by flood.  Both are significant and separate risks, and Zurich knows this.   A blog post on Zurich's website in 2019 (https://www.zurichna.com/knowledge/articles/2019/04/5-reasons-to-brush-up-on-builders-risk-coverage) includes this point:

> While we're noticing hurricanes impacting areas that normally wouldn't experience them, and already hurricane-prone areas are seeing a greater and greater magnitude of storms, we're also seeing that snowfall and heavy rainfall can cause significant damage in many parts of the country. Contractors should note whether their builders risk policy includes coverage for rain or snow-related damage.

59.     Even worse, Zurich is denying its coverage obligations here based on a "surface waters" argument that Zurich knows is inconsistent with its own documents.  Zurich's own website states:  "Surface water floods occur when an urban drainage system is overwhelmed and water flows out into streets and nearby structures."  https://www.zurich.com/en/knowledge/topics/flood-and-water-damage/the-threat-from-above.

60.     If Zurich wanted the definition of FLOOD* in this Policy to include damage from rain, it should have said so in clear and unambiguous language.  In fact, Zurich apparently has other property insurance policies that specifically define "surface waters" to include water from rain.  First Solar's policy does not have such a definition.

61.     Throughout the claims process on the Twiggs Project, Zurich led First Solar to believe that Zurich was continuing to adjust and investigate the claim. First Solar had the reasonable expectation that additional payments would be made, consistent with the initial payment and payments on prior projects and claims.

62.     First Solar also expected that Zurich would construe any ambiguity in favor of First Solar as required by the Policy and applicable law.

63.     Instead, Zurich waited until March of 2021 to announce its ultimate determination that it was not planning to pay any additional amounts under the Policy based on its changed interpretation of FLOOD* and WATER DAMAGE*.

**COUNT I – DECLARATORY JUDGMENT**

64.     First Solar repeats the allegations set forth above as if fully set forth herein.

65.     The Policy is a binding contract under which Zurich was paid premiums in exchange for its contractual agreement to pay First Solar's losses for claims covered under the Policy.

66.     The rain events caused direct physical loss or damage to covered property and are otherwise covered by the Policy.

67.     Zurich has denied coverage under the Policy.

68.     An actual controversy exists between First Solar and Zurich regarding the rights, duties and liabilities under the Policy, and Zurich's denial of coverage for the claim. The controversy is of sufficient immediacy and magnitude to justify declaratory relief.

69.     First Solar seeks a judicial determination of its rights and Zurich's duties under the Policy, and that Zurich is obligated, pursuant to the terms of the Policy, to indemnify First Solar for all past and future losses relating to the claim at issue here.

70.     A binding judgment concluding the controversy may be entered by the Court.

## COUNT II – BREACH OF CONTRACT

71.     First Solar repeats the allegations set forth above as if fully set forth herein.

72.     The Policy is a binding contract under which Zurich was paid premiums in exchange for its contractual agreement to pay First Solar's losses for claims covered under the Policy.

73.     First Solar gave timely notice and has otherwise complied with all of its contractual obligations and conditions under the Policy.

74.     The rain events caused direct physical loss or damage to covered property and are otherwise covered by the Policy.

75.     Zurich has denied coverage under the Policy.

76.     Zurich has breached the insurance contract by, *inter alia*, refusing to provide full coverage for the claims resulting from the rain events.

77.     As a result of Zurich's breach of the insurance contract, First Solar has suffered significant damages in excess of $13,000,000.

## COUNT III – WAIVER AND ESTOPPEL

78.     First Solar repeats the allegations set forth above as if fully set forth herein.

79.     Zurich has waived or is estopped from denying coverage or otherwise avoiding its obligations under the Policy based on prior payments and other steps justifiably relied upon by First Solar during the handling of this claim and other claims.   Zurich also sent multiple communications and had conversations stating that its investigation and consideration of the claim was ongoing after payment of the $600,000 advance, only to finally deny coverage through counsel in March of 2021.

80.     Zurich had a complete opportunity to investigate the claim and has suffered no prejudice.  Alternatively, any prejudice was caused by Zurich.

### COUNT IV – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

81.     First Solar repeats the allegations set forth above as if fully set forth herein.

82.     As an insurer under the Policy, Zurich owes First Solar coverage for the claim resulting from the rain events.

83.     Zurich denied First Solar coverage for its claims and misrepresented the Policy's coverage terms.

84.     Zurich has a duty to investigate claims in good faith and promptly pay valid claims.

85.     There is an implied covenant of good faith and fair dealing in every contract which requires a party to in good faith do everything necessary to effectuate the purposes of the contract and to do nothing to frustrate those purposes.  Zurich has a duty to act in good faith and to deal fairly with First Solar, and to attempt to effectuate a fair and reasonable settlement of First Solar's claim.

86.     Zurich lacks a good faith basis to deny the claim.

87.     Zurich knew that there was no reasonable basis for denying the claim.

88.     Based on its actions in handling the claim, including prior payments under this policy or others, Zurich is barred by the doctrines of waiver and estoppel to deny coverage.

89.     Zurich's actions are outrageous, intentional wrongdoing, and in reckless disregard to First Solar's rights.

90.     Zurich either knew that it did not have a reasonable basis for denying coverage to Plaintiff or acted in reckless disregard of its rights.

91.     First Solar has suffered financial loss due to Zurich's bad faith denial of its claim.

92.     First Solar is entitled to compensatory and extracontractual damages for Zurich's bad faith under applicable law, including but not limited to applicable statutory damages under Ga. Code § 33-4-6, including the amount of the loss; the greater of 50% of the amount of the loss or $5,000; more than $6,000,000 in extracontractual damages; and attorneys' fees.

**COUNT V – ALTERNATIVE CLAIM FOR REFORMATION**

93.     First Solar repeats the allegations set forth above as if fully set forth herein.

94.     As an alternative claim, First Solar seeks reformation of the Policy, specifically the FLOOD* deductible amount in the Certificate.

95.     Because the Twiggs Project is located in Flood Zone X, Unshaded, the Policy requires that the Twiggs Project be designated as Flood Zone 3 and subject to a deductible of $100,000.   This was the clear intent of the parties as confirmed by the Policy, and the Certificate should be reformed in light of this mutual mistake, misrepresentation, or fraud.   If the Court determines that First Solar's claims are damage from FLOOD*, as opposed to WATER DAMAGE*, then the Policy requires a $100,000 deductible.

**PRAYER FOR RELIEF**

WHEREFORE, First Solar respectfully request the following relief:

A.     Judgment in its favor and against Zurich on all counts of the Complaint;

B.     A declaration that the Policy provides coverage for the claim and that Zurich has a duty to indemnify First Solar;

C.     A declaration that the rain events are WATER DAMAGE* under the Policy and therefore the $100,000 deductible applies

D.     A declaration that the rain events are one OCCURRENCE under the Policy and therefore only one deductible applies;

E.     An award for compensatory damages in an amount to be determined at the trial of this cause and no less than $18,000,000;

F.     An award against Zurich for bad faith, including an award of compensatory and punitive damages in the maximum amount allowed by law;

G.     An award of Plaintiffs' reasonable attorneys' fees and costs;

H.     An award of pre-judgment and post-judgment interest, as permitted by law;

I.     A trial by jury on all issues so triable; and

J.     Such other further relief as the Court deems just and proper.


This 12th day of November, 2021.


*[Signature on the following page]*

WATSON SPENCE LLP

*/s/ F. Faison Middleton, IV*
F. Faison Middleton, IV
Georgia Bar No.: 504745
Post Office Box 2008
Albany, Georgia 31702-2008
(229) 436-1545 Telephone
(229) 436-6358 Facsimile
fmiddleton@watsonspence.com

**OF COUNSEL:**
Richard H. Monk III (Ga. Bar No. 557208)
Emily M. Ruzic (*pro hac vice application forthcoming*)
Bradley Arant Boult Cummings LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
rmonk@bradley.com
eruzic@bradley.com

Alex Purvis (*pro hac vice application forthcoming*)
Bradley Arant Boult Cummings LLP
One Jackson Place
Suite 1000
188 E. Capitol Street
Jackson, MS  39201
Telephone: (601) 948-8000
Facsimile: (601) 948-3000
apurvis@bradley.com

To be served at:
Corporation Service Company
2 Sun Court, Suite 400
Peachtree Corners, GA