IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **FIRST SOLAR ELECTRIC, LLC,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CASE NO.: 5:21-CV-00408-MTT |
| | ) |
| **ZURICH AMERICAN** | ) |
| **INSURANCE COMPANY,** | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT ON SUIT PROVISION**

The Court should grant Plaintiff First Solar Electric, LLC's ("First Solar") Motion for Partial Summary Judgment on Suit Provision (Doc. 132) because the plain language of the Suit Against the Company provision (the "Suit Provision") states that a suit against Zurich "will *not* be barred" if brought within twelve months after an occurrence becomes known to the insured. It is, therefore, an unambiguous time-expansion provision, not a time-limitation provision. Zurich admits that its contrary interpretation can only be reached by inferring the "converse interpretation" (actually the inverse interpretation) of the Suit Provision's actual text. An inverse interpretation reachable only by inference is not a "clear and unambiguous" interpretation. And, inferring an inverse is a logical fallacy.

First Solar presents the only reasonable interpretation of the Suit Provision's clear terms. Zurich itself acknowledges that a "clear and unambiguous" interpretation of the "plain language of the Policy" is that "if an action is brought within 12 months of the Named Insured (First Solar) knowing of the 'Occurrence', then it is not barred." Doc. 152 at 9. Even if the Court concludes that there are multiple reasonable interpretations of the Suit Provision, Georgia law requires construing

the Suit Provision in favor of First Solar. Either way, the correct outcome is still the same: the Court should hold as a matter of law that the Suit Provision is not a contractual limitation provision that bars First Solar's claim in this case.

## Argument

I.  **The Suit Provision is an Unambiguous Time-Expansion Provision and Cannot be Reasonably Interpreted as a Time-Limitation Provision.**

   A.  **Zurich cannot dispute that the clear and unambiguous text expands time.**

The Suit Provision sets forth time-expansion via a clear if-then statement: *if* "commenced within (12) twelve months after the OCCURRENCE* becomes known to the Named Insured" *then* "[a]ny action or proceeding against the Company for recovery of any loss under this Policy will not be barred." Doc. 1-1 at 63. Zurich itself acknowledges in a moment of candor that:

> Based on the plain language of the Policy, if an action is brought within 12 months of the Named Insured (First Solar) knowing of the "Occurrence", then it is not barred. These terms are clear and unambiguous.

Doc. 152 at 9. Zurich's Opposition does not, and cannot, dispute that the phrase "will not be barred" is a permissive, not limiting, phrase. Zurich does not dispute that the Suit Provision contains no limiting language. And, Zurich cannot explanation how the "usual and common" use of the phrase "will not be barred" could mean "will [] be barred." *Cf.* O.C.G.A. § 13-2-2(2) ("Words generally bear their usual and common signification . . ..").

Because the Suit Provision's plain text does not support Zurich's conclusion, Zurich repeats *ad nauseum* its argument the Suit Provision is a "limitation period," "limitation condition," "limitation clause," or "limitation provision" containing a "12-month limitation" or "12-month time limitation requirement" that First Solar "violated" or "failed to comply" with. Doc. 152 at 1–2, 8–13, 16, 18–20. But, Zurich entirely fails to identify any limitations in the Suit Provision or duty imposed on First Solar by the Suit Provision. No amount of repetition can alter the policy

language which Zurich drafted and to which the parties agreed. The Court should enforce the Suit Provision as written, giving the terms in the Suit Provision their "usual and common" meaning. Zurich's rhetoric seeks to add limiting terms contrary to the actual Suit Provision.

### B. Zurich's "converse interpretation" by inference is not a clear and unambiguous or reasonable interpretation.

Zurich acknowledges that its interpretation of the Suit Provision is not a direct interpretation of the "clear and unambiguous" terms (*i.e.*, the interpretation on page 9 of its Opposition), but rather a "converse interpretation" that Zurich contends can reasonably be reached through "inference." Doc. 152 at 10. In making this argument, Zurich—perhaps unwittingly—concedes two interpretations of the Suit Provision: a "direct interpretation" based on the "clear and unambiguous" terms (Doc. 152 at 9) and a "converse interpretation" which Zurich infers from the terms (Doc. 152 at 10). This argument is self-defeating: "if the language is susceptible to two different constructions the one most favorable to the insured will be adopted." *Zurich Am. Ins. Co. of Illinois v. Bruce*, 193 Ga. App. 804, 806 (1989).

Regardless, Zurich's inverse-interpretation-through-inference violates established principles of contract interpretation and is logically invalid. First, contract terms must be given their "usual and common" meaning, not an inverse inferred meaning. O.C.G.A. § 13-2-2(2). "The natural, obvious meaning is to be preferred over any curious, hidden meaning," *e.g.*, an "inferred" meaning, "which nothing but the exigency of a hard case and the ingenuity of a trained and acute mind would discover." *Lester v. Great Cent. Ins. Co.*, 138 Ga. App. 353, 355 (1976). Where the terms are "plain and obvious, they must be given their literal meaning and no new terms can be inserted" or inferred. *Frey v. Nationwide Mut. Ins. Co.*, 371 Ga. App. 590, 593 (2024) (quotation omitted). Zurich's interpretation is not the "literal meaning" of the text, but an inverse meaning Zurich infers from reading between the lines of the text. At minimum, Zurich's inverse-

interpretation-through-inference is not "explicit, prominent, clear and unambiguous" as required for an enforceable exculpatory clause. *Monitronics Int'l, Inc. v. Veasley*, 323 Ga. App. 126, 135 (2013).

Second, Zurich's inverse-interpretation-through-inference[1] is logically flawed. As a matter of elementary logic, an inverse may not be validly inferred. Take, for example, the statement that "if Queen Elizabeth is an American citizen, then she is a human being." One may not logically infer the inverse: "Queen Elizabeth is not an American citizen. Therefore, she is not a human being." This is not the first time Zurich's logical lapse has been taken to task. *Northwest Steel* held Zurich's reasoning was "fallacious," explaining that Zurich employed a logical fallacy known as "denying the antecedent" or the inverse fallacy. *Nw. Steel Erection Co. v. Zurich Am. Ins. Co.*, No. 4:07CV3184, 2008 WL 187687, at *1 n.5 (D. Neb. Jan. 18, 2008). Zurich's erroneous interpretation must be disregarded, even as an ambiguous interpretation, because it is not "logical and reasonable." *Georgia Farm Bureau Mut. Ins. Co. v. Meyers*, 249 Ga. App. 322, 324 (2001).

C.  ***Northwest Steel* correctly interpreted the Suit Provision.**

Zurich does not dispute that *Northwest Steel* rejected its argument that the Suit Provision is a contractual limitation. 2008 WL 187687, at *1; *see also M.A. Mortenson Co. v. Indem. Ins. Co. of N. Am.*, No. CIV.98-2319/RHK/JMM, 1999 WL 33911358, at *4 (D. Minn. Dec. 23, 1999) (holding the Suit Provision could be interpreted as "a guarantee that a suit that would otherwise be barred under the first sentence will not be barred if brought within twelve months after its

---

[1] In actuality, Zurich is not seeking to employ a "*converse* interpretation," but an "*inverse* interpretation." A converse statement switches the order of the condition and result, while the inverse negates both the condition and result. Here, Zurich wants to imply the inverse: that *if* a suit is not "commenced within (12) twelve months" *then* it will be barred. Regardless, inferring a converse interpretation is equally illogical. Take, for example, the statement that "if it rains, then the lawn is wet." One cannot logically infer from that statement the converse: that "if the lawn is wet, then it rained."

4

occurrence."). Zurich has no answer to the Court's reasoning, including its conclusion that the Suit Provision was a "permissive" provision establishing a "grace period." *Id.* at *1, 4 n.9, 5. Zurich cannot distinguish *Northwest Steel* just because the current version of the Suit Provision uses the phrase "required by applicable statute" rather than "provided by applicable statute." This one word in what *Northwest Steel* called the "conformity clause" had nothing to do with the Court's unassailable conclusion that "will not be barred" did not mean "will be barred." *Id.* at *1. Even so, the Court interpreted the word "provided" synonymously with "required" by requiring "an express statutory prohibition." *Id.*; *see also infra* Part III (comparing the verbs "provide" and "require").

Zurich cannot rely on *Oakland-Macomb* to defend its interpretation. *See Oakland-Macomb Interceptor Drain Drainage Dist. v. Zurich Am. Ins. Co.*, No. 13-cv-12399, 2013 WL 5638755, at *3 (E.D. Mich. Oct. 15, 2013). Zurich does not dispute that *Oakland-Macomb*, unlike *Northwest Steel*, contains no discussion, analysis, or interpretation of the Suit Provision but instead addressed only a tolling argument. Zurich also does not contest the principle that "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170, 125 S. Ct. 577, 586 (2004). As these unpublished decisions are only relevant for their persuasive value, the Court should rely on the extensive persuasive reasoning in *Northwest Steel* and *M.A. Mortenson* and disregard the reasoning-devoid conclusion in *Oakland-Macomb*.

### D.  Zurich's cases demonstrate that the Suit Provision is not a limitation provision.

Zurich cannot prove that the Suit Provision is a limitation provision simply by citing other cases, interpreting different contractual language. The dispute in this case is not whether Zurich and First Solar theoretically could have agreed to a clear and unambiguous suit limitation provision, but rather whether the Suit Provision is a contractual limitation provision. Far from

5

supporting Zurich's position, the cited cases demonstrate that the Suit Provision is not a contractual limitation provision because the Suit Provision does not contain the limiting language present in the valid contractual limitation provisions in each of these cases. *See, e.g.*, *Willis v. Allstate Ins. Co.*, 334 Ga. App. 540, 542 (2015) (contractual limitation provision stated "Any suit or action must be brought within *one year*"); *see also* Doc. 101-2 (chart comparing the Suit Provision to different contractual language in cases cited by Zurich).

### E. First Solar's interpretation is the only reasonable interpretation.

Zurich provides no rationale for its argument that First Solar's interpretation renders the Suit Provision "meaningless" and "not reasonable." *Cf.* Doc. 152 at 9, 12, 13. To the contrary, the Suit Provision makes perfect sense as a "savings clause" or "safe harbor," and is consistent with the rest of the Policy. In fact, this interpretation is natural given its position *at the end of the Policy's coverage conditions* and *immediately following* a clause that would bar a suit "unless the Insured will have fully complied with all the requirements of this Policy." Doc. 1-1 at 63. The Suit Provision means "that a suit that would otherwise be barred under the first sentence will not be barred if brought within twelve months after its occurrence." *M.A. Mortenson Co.*, 1999 WL 33911358, at *4. For example, the Policy states that proof of loss must be filed "not later than sixty (60) days following [Zurich's] request." Doc. 1-1 at 60. Absent the Suit Provision, Zurich might argue that an insured forfeits millions of dollars in coverage because it filed proof of loss notice on the 61st day instead of the 60th day. The Suit Provision mitigates this harsh result.

Zurich fails to engage with First Solar's interpretation or explain *why* it contends this interpretation is "meaningless" and "not reasonable." Instead, Zurich "begs the question" by arguing that First Solar's interpretation ignores "the 12-month time limitation requirement." Doc. 152 at 13. Of course, whether the "(12) twelve months" in the Suit Provision is a time expansion

6

or a time limitation *is the question*. Zurich provides no reason why interpreting it as a time expansion is meaningless or unreasonable—as did *Northwest Steel* and *M.A. Mortenson*.

Conversely, Zurich's interpretation renders portions of the Policy meaningless in violation of Georgia law and produces absurd results. First, Zurich acknowledges that "Georgia law requires us to give meaning to every term [of a contract] rather than construe any term as meaningless, and to construe a contract so as to uphold the contract in whole and in every part; . . .." Doc. 152 at 13 (quoting *Albany v. Dougherty Cnty.*, 352 Ga. App. 664, 668 (2019)). Zurich's interpretation would render meaningless the Policy's ADR provision which tolls "[a]ny *statute of limitation* that may be applicable to the dispute," but not any purported limitation imposed by the Suit Provision. Doc. 1-1 at 62 (emphasis added). Tolling only the longer statute of limitations but not a shorter contractual limitation would render the tolling meaningless. If the Suit Provision were a limitation provision, it would have been included in the tolling. Zurich has no response other than to weakly posit in a footnote that the agreement to toll a "statute of limitation" somehow "encompasses" the Suit Provision. Doc. 152 at 16 n.5. This *ipse dixit* statement ignores the differences between a contractual limitation provision and a statute of limitation.

Second, Zurich does not dispute that its interpretation would have required First Solar to file suit *months* before Zurich reached a coverage position and while Zurich's review of the claim was still "ongoing." *See* Doc. 100-3. Zurich does not dispute that its interpretation would have required First Solar to send an O.C.G.A. § 33-4-6 bad faith demand *five months* before Zurich's March 22, 2021 coverage denial upon which the bad faith claim could be based. And, Zurich does not dispute that had First Solar filed suit while Zurich's review was ongoing, Zurich would have argued the suit was premature because it had not yet reached a coverage position. Zurich admits that "[a]n insurance contract must be read 'in a way that does not lead to an absurd result,'" but its

7

proffered interpretation of the Suit Provision does just that. Doc. 152 at 7 (quoting *Off. Depot, Inc. v. Dist. at Howell Mill, LLC*, 309 Ga. App. 525, 530 (2011)).

## II. Even if Zurich's Interpretation Were Reasonable, the Suit Provision Would Still be Construed in Favor of First Solar.

For the reasons explained above, the Suit Provision is an unambiguous time-expansion provision, and Zurich's inverse-interpretation-through-inference is implausible, illogical, and unreasonable. Even if the Court disagrees, however, "[w]here an insurance contract is ambiguous or is capable of being construed variously, it must be construed against the insurer and in favor of the insured." *McEver v. Nw. Mut. Life Ins. Co.*, 629 F. Supp. 3d 1340, 1354 (M.D. Ga. 2022) (quoting *Erie Indem. Co. v. Lascala*, 206 Ga. App. 283, 284 (1992)). *Stonegate Bank v. TD Bank, N.A.*, 596 F. App'x 834, 841 (11th Cir. 2015), is inapposite because it did not involve an insurance contract. Regardless, that unpublished decision (not authored by a judge of the Eleventh Circuit) *did not cite a single Georgia authority* in analyzing the *contra proferentem* canon, *id.* at 844, instead dismissing Georgia law as "not tak[ing] a uniform approach" and "tend[ing] to make use of different rules on an ad hoc basis." *Id.* at 841. Georgia law is clear: "if the language is susceptible to two different constructions the one most favorable to the insured will be adopted." *Zurich Am. Ins. Co. of Illinois v. Bruce*, 193 Ga. App. 804, 806 (1989).

Zurich spills much ink arguing what is *not* ambiguity based on cherry-picked quotations[2] scoured from decisions across the country. But, the standard in Georgia is straightforward: "Where

---

[2] For example, Zurich cites cases holding that a contract is not ambiguous "merely" because different courts have reached different interpretations but omits the Eleventh Circuit's holding that "differing interpretations of the same provision is evidence of ambiguity." *Dahl-Eimers v. Mut. of Omaha Life Ins. Co.*, 986 F.2d 1379, 1381–82 (11th Cir. 1993) (applying Florida law); *see also Grissom v. Com. Union Ins. Co.*, 610 So. 2d 1299, 1304 (Fla. Dist. Ct. App. 1992) ("The case law of this state has given diverse meanings to the word "accident" when used in insurance policies, and this fact is sufficient in itself to belie the notion that the policy language is clear and unambiguous.").

a term of a policy of insurance is susceptible to two or more constructions, even when such multiple constructions are all logical and reasonable, such term is ambiguous." *Georgia Farm Bureau Mut. Ins. Co. v. Meyers*, 249 Ga. App. 322, 324 (2001). The arguments above demonstrate, at minimum, that First Solar's interpretation is *a* reasonable and logical interpretation of the Suit Provision.

### III.    The *Queen Tufting* Rule Applies to the Suit Provision.

In *Queen Tufting Co. v. Fireman's Fund Ins. Co.*, the Georgia Supreme Court held that a contractual limitation providing that "No suit or action on this policy . . . shall be sustainable in any Court . . . unless commenced within twelve (12) months next after the happening of the loss, unless a longer period of time is provided by applicable statute" was governed by Georgia's six-year statute of limitations for contract actions—*i.e.*, the "applicable statute." 239 Ga. 843, 843 (1977). Contrary to Zurich's argument, the *Queen Tufting* rule is not limited to this exact language. Although cases (like those cited by Zurich) have refused to apply the rule to contractual provisions requiring "conflict with the statutes of this state," other cases have applied the rule to different, but more analogous provisions like a provision stating that "if the law of the state in which this policy is issued allows more than two years to bring legal action against us, that longer period of time will apply." *Dr. Roger Abbott, Inc. v. State Farm Fire & Cas. Co.*, No. 1:15-CV-00201-LMM, 2016 WL 4592172, at *2 (N.D. Ga. Jan. 5, 2016). The Suit Provision is analogous to the provision in *Queen Tufting*. The relevant clause differs only in using the term "required" instead of "provided." In this context, the two words are synonymous because the verb "provide" in terms of a law means "(of a law or contract) to state that something must happen or be done." *Provide*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/provide. Thus, one could equally say that "[t]he new statute provides for life imprisonment without parole" or the "[t]he new statute [requires] life imprisonment without parole." *See id*. Even if the Suit Provision were a time-limitation, the *Queen Tufting* rule would apply Georgia's six-year statute of limitations.

9

### IV. Zurich's Second Request for Summary Judgment on Waiver is Procedurally Improper and Misstates Facts.

The Court should reject outright Zurich's procedurally improper second request for summary judgment on waiver. At the outset, if the Court agrees that the Suit Provision is a time-expansion provision, then waiver is moot. In any event, Zurich's motion is procedurally improper because Zurich already sought summary judgment on this issue, and the Court already denied Zurich's motion. Zurich did not seek reconsideration of that ruling, and provides no reason the Court's prior ruling was erroneous. Zurich's request, via motion, for the Court to *sua sponte* reconsider waiver of the Suit Provision is a contradiction in terms.

If the Court were to *sua sponte* reconsider waiver, the Court must provide First Solar notice and an opportunity to respond to Zurich's misstatements. *See* Fed. R. Civ. P. 56(f). For just one example, Zurich's argument is based on its theory that an August 4 letter was an unambiguous reservation of rights. Zurich's corporate representative, however, testified that the August 4 letter was not a reservation of rights. Doc. 85-1 at 20, 38. And, the Court already concluded that the August 4 letter "did not unambiguously state which deductible applied to First Solar's claims." Doc. 116 at 21. Zurich's argument, ironically, is also self-defeating. Zurich's August 4 letter did not raise the Suit Provision as a potential defense. Thus, even if the Suit Provision were a contractual limitation and the August 4 letter a reservation of rights letter, any defense based upon the Suit Provision would have been waived. *Hoover v. Maxum Indem. Co.*, 291 Ga. 402, 406–07 (2012) (holding an insurer waives any defense not stated in its reservation of rights letter).

### Conclusion

For the foregoing reasons, First Solar requests the Court grant its Motion for Partial Summary Judgment on Suit Provision.

10

Respectfully submitted this 22nd day of October, 2024.

        **BRADLEY ARANT BOULT CUMMINGS LLP**

        */s/ Justin P. Gunter*
        Justin P. Gunter (GA Bar No. 969468)
        Promenade Tower
        1230 Peachtree Street NE, 20th Floor
        Atlanta, Georgia 30309
        Telephone: (404) 868-2100
        jgunter@bradley.com

        Alex Purvis (*Admitted Pro Hac Vice)*
        Jonathan Barnes (*Admitted Pro Hac Vice*)
        Jason Tullos (*Admitted Pro Hac Vice*)
        One Jackson Place
        188 E. Capitol Street, Suite 1000
        Jackson, MS 39201
        Telephone: (601) 948-8000
        apurvis@bradley.com
        jbarnes@bradley.com
        jtullos@bradley.com

        Richard H. Monk III (GA Bar No. 557208)
        Emily M. Ruzic (GA Bar No. 765877)
        One Federal Place
        1819 Fifth Avenue North
        Birmingham, AL 35203-2119
        Telephone: (205) 521-8000
        rmonk@bradley.com
        eruzic@bradley.com

        **WATSON SPENCE LLP**

        F. Faison Middleton, IV (GA Bar No. 504755)
        P.O. Box 2008
        Albany, GA 31702-2008
        Telephone: (229) 436-1545
        fmiddleton@watsonspence.com

        *Counsel for Plaintiff First Solar Electric, LLC*

**CERTIFICATE OF SERVICE**

      I hereby certify that on October 22, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will provide copies of the same to the following counsel of record:

>Anthony W. Morris
>Brittanie Browning
>Samuel Wesley
>Pia-Milan Green
>Akerman LLP
>999 Peachtree Street, NE
>Suite 1700
>Atlanta, GA 30309
>anthony.morris@akerman.com
>brittanie.browning@akerman.com
>samuel.wesley@akerman.com
>pia-milan.green@akerman.com

>*/s/ Justin P. Gunter*
>Justin P. Gunter