IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| FIRST SOLAR ELECTRIC, LLC ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 5:21-cv-408 (MTT) |
| ) | |
| ZURICH AMERICAN INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**ORDER**

Defendant Zurich American Insurance Company has moved to strike the testimony of First Solar Electric LLC witness Ted Garrett, who took the stand the first day of trial. Zurich's lawyers claim Mr. Garrett surprised them. For example, Zurich claims First Solar never disclosed before trial that Mr. Garrett was First Solar's "Senior Project Manager." Doc. 189 at 4. Rather than lodging a contemporaneous objection to Mr. Garrett's testimony, Zurich filed its 20-page motion and brief on January 16, 2025, the fourth day of trial. *Id.* Zurich argued it was completely unable to object timely because "it was such surprise testimony" and "stunning testimony that came in." *Id.* The motion is **DENIED**.

**I. DISCUSSION**

This case arises from a dispute over insurance coverage for flood damage. The underlying facts are discussed in detail in prior orders and will not be repeated here. *See, e.g.,* Doc. 116. For present purposes, it is enough to say that when the trial began

on January 13th, the dispute had largely boiled down to one of damages.[1]  The Court divides its discussion of the facts relevant to Zurich's motion into two parts—what happened during discovery and what happened just before and at trial, and addresses the later events first.

The parties submitted their proposed pretrial order on September 24, 2024.[2]  In the proposed order, First Solar identified Mr. Garrett as a "will call" witness. Doc. 200 ¶ 15(a).  The order setting the pre-trial conference required the parties to raise any objections to identified witnesses at the pretrial conference and warned that objections not made "shall be deemed waived."  Doc. 131 ¶ 3(c).  Also on September 24, Zurich filed what it styled as a trial brief but what really was a far too late motion challenging First Solar's damages claims.[3]  Doc. 136.  First Solar filed its response to Zurich's motion on October 15, 2024, and had this to say about Mr. Garrett:

> **To the extent there remain concerns from Zurich regarding whether a particular expense was "actually incurred" or why it was incurred (e.g., whether it was an "expediting expense" or "extra expense" as defined by the policy), First Solar expects that Ted Garrett, Project Manager at the Twiggs Project (listed by First Solar as a "will call" witness") will be able to resolve those concerns**.  Zurich chose not to depose Mr. Garrett, despite him being identified in First Solar's initial disclosures as potentially have [sic] knowledge "regarding the construction and remediation of the Twiggs Project, the rain events which are the subject of the insurance claim in this lawsuit, and the damages incurred by First Solar."

---

[1] That perhaps has some significance because, until those rulings, the parties were primarily focused on coverage and other issues.  It seems apparent that neither party gave much thought to damages during discovery, a fact that the Court noted several times and will note again.

[2] The proposed pretrial order was emailed to chambers.  The final version is on the docket at Doc. 200.

[3] Zurich's seeking dispositive rulings on damages in a trial brief is another indication of the inattention to damages.

Doc. 151 at 8-9 (internal citations omitted) (emphasis added) (red and larger font for added emphasis because of Zurich's claim "that at no time prior to trial did First Solar disclose…that Garrett was the Senior Project Manager." Doc. 189 at 4.)

The Court convened the pretrial conference on November 21, 2024. Doc. 166. First Solar confirmed that Mr. Garrett would testify live.[4] Doc. 174 at 22:8. First Solar reported that Mr. Garrett, along with its only other live witness, John Shaw, would provide "most of our proof." *Id.* at 62:12-13. Zurich raised no objection to Mr. Garrett or the subject matter of his testimony. Then at a January 8, 2025 status conference, First Solar again confirmed that Mr. Garrett would be its first witness. Doc. 183 at 48:3-4. And again, Zurich raised no objection.

Zurich does not say why it failed to raise objections at these conferences. But if it had, the Court is confident it could have addressed any legitimate concern. As an example, during trial, First Solar sensed that the trial testimony of Zurich's Rule 30(b)(6) witness might stretch beyond the witness's deposition testimony.[5] The Court offered First Solar the opportunity to depose the witness before he took the stand.

In sum, at least as early as October 15, 2024 Zurich knew that Project Manager Garrett would testify about expenses incurred and where those expenses fell within the applicable policy provision. Doc. 151 at 8-9. First Solar even reminded Zurich that it had not asked to depose Mr. Garrett. *Id.* Had Zurich complained then, or at the

---

[4] Several witnesses testified by deposition.

[5] The substance of the dispute is not material, but it is another example of the parties' inattention to damages during discovery.

November 21 pre-trial conference or any time before trial, Zurich's concerns, if legitimate, could have been addressed, most likely by deposing Mr. Garrett.

The trial began on January 13, 2025. In its opening statement, First Solar discussed in detail the anticipated testimony of Mr. Garrett, "the senior project manager at the Twiggs Project, [who] was on the frontlines in responding to the impacts of these rainstorms and making decisions on behalf of First Solar." Doc. 189-8 at 36:19-20. First Solar called Mr. Garrett to testify at 2:50 p.m., immediately after opening statements. Doc. 187 at 2. First Solar's direct examination continued until 4:41 p.m. when the Court dismissed the jury for the day. *Id.* During Mr. Garrett's testimony that day, Zurich's lawyers[6] repeatedly and aggressively objected. In no objection did Zurich claim that it had been surprised by Mr. Garrett's appearance or his testimony. Nor did Zurich raise any objection to Mr. Garrett's testimony when the Court briefly addressed the parties after the jury had been dismissed for the day. The next morning, the Court held another conference with counsel to address various issues. Doc. 188 at 1. Again, Zurich raised no claim of surprise. First Solar then continued its direct examination of Mr. Garrett. Doc. 188 at 1. And again, Zurich's lawyers objected frequently but did not claim surprise.

Zurich began its cross-examination of Mr. Garrett at 1:06 p.m. Doc. 188 at 2. It was the Court's view then, and now, that Zurich's counsel's cross-examination was thorough and effective. She displayed a firm command of the evidence in this document-heavy case, and she used those documents throughout her examination to

---

[6] Zurich's lawyers took a team approach to objections, an improper practice that the Court tolerated. That is relevant here because if one lawyer was surprised to the point of being stunned by Mr. Garrett's appearance on the stand or his testimony, another could have jumped in.

-4-

make her points.  Neither then nor at any other time did Zurich claim that it could not effectively cross-examine Mr. Garrett because it had been surprised or lacked knowledge of or access to documents.

The Court excused the jury that Tuesday at 2:30 p.m.[7]  Doc. 188 at 2.  The Court and the parties then conferred for an hour and fifteen minutes to discuss various matters.  *Id.*  Again, Zurich did not complain it had been surprised.

On trial day three, the Court convened at 8:18 a.m. and recessed at 4:29 p.m.  Doc. 191.  Throughout that day, Zurich made no mention of Mr. Garrett.  That now seems particularly odd because clearly by that point Zurich's lawyers were hard at work on their 20-page motion for sanctions.

The Court convened at 8:21 a.m. on Thursday.  Doc. 197 at 1.  That day too began with no mention of Mr. Garrett.  Zurich's motion for sanctions hit the docket at 10:04 a.m., while most of us were at work in the courtroom.  Doc. 189.  Zurich did not, as common courtesy would seem to require, provide the Court or First Solar with a copy of the motion.  Ignorant of events, the Court excused the jury at 10:16 a.m. for its morning break. Doc. 197 at 2. During that break, First Solar's counsel announced that he had learned, not from Zurich, that the motion was on the docket.  Until then, there had been no claim of surprise, and the Court had not perceived any inkling of surprise on anyone's part.  But at that point, surprise was manifest—surprise on the Court's part at Zurich's out-of-the-blue motion.  Although the Court had only skimmed the motion, Zurich asked for a ruling on the motion.  That led the Court to ask the obvious

---

[7] The jurors' trial day ran from 8:30 a.m. to 2:30 p.m. with two 20-minute breaks.

question—had the Court somehow missed an objection to Mr. Garrett's testimony? Zurich responded:

> Your honor, there was no contemporaneous objection. The problem was it was such surprise testimony because of the non-disclosure that was addressed in the motion that I think – I call it a stunning testimony that came in. But that's also the reason for not – not having a consultation, meet-and-confer, or anything. It was this testimony that came out, it was – people were scratching their heads, what's this all about.

Obviously, or at least obviously to the Court, the Court could not begin to contemplate granting Zurich's motion without allowing First Solar to respond, and the Court declined Zurich's request for a ruling. On the other hand, the Court could have easily, given Zurich's failure to object, denied the motion then, but the Court suspected that a fuller record would shed more light on whether Zurich's lawyers were in fact stunned and surprised. The Court now has First Solar's response (Doc. 207), and the Court turns to events before pretrial and trial proceedings.

On April 11, 2022, First Solar made its initial disclosures. Those disclosures stated that Mr. Garrett was the "Former Director of Business Development" and that he may have had "information regarding the construction and remediation of the Twiggs Project, the rain events which are the subject of the insurance claim in this lawsuit, and the damages incurred by First Solar." Doc. 189-2 at 8.

As discovery progressed, Mr. Garrett was discussed in depositions and referenced in documents. For example, on June 1, 2023, one of Zurich's attorneys asked a former First Solar employee, Asmi Doshi, "do you know who the project manager at the Twiggs County project was?" to which she responded "[y]es. Todd Garrett." Doc. 192 at 20:13-15. Zurich's expert file noted that the "project manager was Ted Garrett." Doc. 206-1 at 3. On June 8, 2023 Zurich's counsel asked a deponent to

read an excerpt from a document that identified Mr. Garrett as "the project manager for Twiggs."  Doc. 90-22 at 123:21-23.[8]

Additionally, Zurich tendered at trial several documents, presumably produced during discovery, that referenced Mr. Garrett.  For instance, one of Zurich's trial exhibits stated that Mr. Garrett was "Sr. Project Manager," that he was "First Solar Upper Management," and that he had "taken a more direct role in the project."  Doc. 199-22 at 5.  Zurich also produced a deposition exhibit that identified Mr. Garrett as one of five "[k]ey project personnel" for the solar project.  Doc. 206-2 at 298.

Zurich also claims it was unaware of First Solar's Project Information Management System, or PIMS, which is apparently just a database for project information.  Doc. 189 at 2-3.  But documents in Zurich's possession during discovery referred to First Solar's PIMS.  Doc. 189 at 2-3.  For example, Zurich introduced a weekly report at trial that included a section titled "PIMS Documentation."  Doc. 199-15 at 26.  Zurich's pre-trial exhibit list included at least thirteen additional weekly reports that contained the same "PIMS Documentation" sections.  Doc. 200-5.  Additionally, subcontracts that Zurich produced during discovery made clear PIMS's function – a repository of project data.  *See, e.g.,* Doc. 206-7 at 43 ("Subcontractor shall utilize Contractor's PIMS for transmitting and receiving Project related documents and

---

[8] In its motion for sanctions, Zurich claims that First Solar misrepresented Garrett's role in this action because its corporate representative, Richard Romero, testified in his May 2023 deposition that he did not know who Garrett was.  Doc. 189 at 6.  But even if Romero did not know who Mr. Garrett was on May 11, 2023, Ms. Doshi and Mr. Shaw's deposition testimony a month later cleared up any possible confusion about Mr. Garrett's role.

correspondence.").[9]  Thus, while Zurich may have somehow overlooked the name of the project's database, it is clear that information from the database had been produced.

In short, Zurich's claim that it first learned of Project Manager Garrett and the subject matter of his testimony when he took the stand is simply not true.  And even if it were true, Zurich did not timely object.  To the extent that Zurich claims First Solar should have produced additional PIMS documents or data (First Solar produced almost 17,500 pages of documents in response to Zurich's document requests), it was incumbent on Zurich to raise that issue during discovery rather than on the fourth day of trial.  Doc. 206 at 9.

A final word on the parties' cavalier approach to damages.  The topics for examination in Zurich's Rule 30(b)(6) deposition included "financial damages" and "purported losses."  Doc. 189-6 at 4-5.  But Zurich's examination of the 30(b)(6) deponent on damages issues was cursory at most.  Of course, as noted, the parties had their eyes on other issues.  Also, the amount of damages was never in serious dispute.  During discovery, Zurich admitted that "it completed its analysis of the claimed damages to the December 13th, 2019; February 5th, 2020; February 13, 2020; March 3, 2020; and April 18, 2020 rain events by March 22, 2021."  Zurich stipulated that First Solar was entitled to recover $4,917,303, and the dispute over the remaining claimed losses centered not on the amount but rather on whether they fell within the scope of the applicable policy provision.  Doc. 200 at 5.  As trial neared, Zurich apparently

---

[9] In support of its motion, Zurich filed the affidavit of an associate attorney at Akerman, LLP, who claims to have searched First Solar's production for documents produced from the PIMS.  Doc. 203.  She claims that no documents generated from the PIMS were produced.  *Id.* ¶¶ 8, 10, 12.  However, it is clear that documents referencing the PIMS were produced.

recognized that it had neglected the issues of damages, hence, for example, its trial brief-cum-summary judgment motion on damages.  Doc. 136.  Even then it focused on the scope of coverage, not the amount of the losses.  By then, weeks before trial, Zurich knew Project Manager Ted Garrett would be First Solar's damages witness and that he would testify about  "whether a particular expense was 'actually incurred' or why it was incurred (e.g., whether it was an 'expediting expense' or 'extra expense' as defined by the policy)."  Doc. 151 at 8-9.  This was the precise issue Zurich raised in its September 24, 2024 "trial brief."  Doc. 136.

## II.  CONCLUSION

The Court finds that Zurich knew long before trial that Mr. Garrett was the manager of the Twiggs Project; Zurich knew before trial the substance of Mr. Garrett's testimony; Zurich chose not to depose Mr. Garrett; a well prepared Zurich lawyer effectively cross-examined Mr. Garrett; and Zurich's claim that it was stunned and surprised when Mr. Garrett took the stand and testified about First Solar's damages is false.

Accordingly, Zurich's Motions for Sanctions (Doc. 189) is **DENIED**.

**SO ORDERED**, this 5th day of February, 2025.

                                                         S/ Marc T. Treadwell
                                                         MARC T. TREADWELL, JUDGE
                                                         UNITED STATES DISTRICT COURT