IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| FIRST SOLAR ELECTRIC, LLC, <br><br> Plaintiff, <br><br> v. <br><br> ZURICH AMERICAN INSURANCE COMPANY, <br><br> Defendant. | CIVIL ACTION NO. 5:21-cv-408 (MTT) |

## ORDER

On January 17, 2025, a jury found that Zurich American Insurance Company was liable to First Solar Electric, LLC for $12,238,060.61.  Doc. 205.  Zurich has now moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) or, in the alternative, for a new trial under Rule 59(a).  Doc. 215.  Zurich has also moved to alter or amend the judgment under Rule 59(e).  Doc. 216.  For the following reasons, those motions are **DENIED.**

## I. BACKGROUND

This case arises from a dispute over insurance coverage for flood damage to First Solar's Twiggs County, Georgia solar construction project.  Doc. 1.  The underlying facts are discussed in detail in prior orders and will not be repeated here. *See, e.g.*, Doc. 116.  A jury trial was held from January 13 until January 17, 2025.  Docs. 187; 198.  Before trial, Zurich agreed that it owed First Solar $4,917,303.00 in liquidated damages.  Doc. 200-2 ¶ 15.  First Solar claimed Zurich owed it an additional $5,829,028.29 in unliquidated damages.  *Id.* ¶ 14.  The jury's sole focus was First Solar's unliquidated

damages claim. The jury found against Zurich and awarded First Solar an additional $5,826,038.29 in unliquidated damages. Docs. 204 at 2; 205. The Court, pursuant to O.C.G.A. § 7-4-15, awarded pre-judgment interest on First Solar's liquidated damages. Doc. 204 at 1-2. The jury, pursuant to O.C.G.A. § 13-6-13, awarded pre-judgment interest on unliquidated damages. *Id.* at 2. First Solar's total award was $12,238,060.61. Doc. 205.

## II. STANDARD

A court may grant judgment as a matter of law "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). If a party timely moves for judgment as a matter of law "before the case is submitted to a jury," it may renew its motion for judgment as a matter of law within 28 days after the entry of judgment. Fed. R. Civ. P. 50(b).

In its renewed motion for judgment as a matter of law, a party may also include an alternative request for a new trial under Rule 59. *Id.* "[U]nder Rule 59(a), a district court may, in its discretion, grant a new trial 'if in [the court's] opinion, the verdict is against the clear weight of the evidence…or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *McGinnis v. American Home Mortgage Servicing, Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016) (quoting *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 243, 251 (11th Cir. 1940).

Rule 59(e) also allows a party to move to amend the judgment within 28 days after the entry of judgment. "[T]he only grounds for granting a Rule 59 motion are

newly-discovered evidence or manifest errors of law or fact." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (cleaned up).  "A Rule 59(e) motion cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment."  *Id.*

### III. DISCUSSION

**A. Judgment as a Matter of Law**

Zurich argues it is entitled to Judgment as a Matter of Law (1) because First Solar failed to provide sufficient evidence that the policy covered its damages as "Extra and Expediting Expenses;" (2) because First Solar's claims were time-barred by the policy; and (3) because First Solar was not entitled to pre-judgment interest on its unliquidated damages.  Doc. 215-1.

*1. First Solar presented sufficient evidence that its damages were covered under the policy as extra and expediting expenses.*

Zurich argues that First Solar did not provide sufficient evidence that its damages were covered under the policy's coverage extensions for extra and expediting expenses.  Doc. 215-1.  Those provisions extended coverage to:

> (1) Expediting expenses, including any reasonable wages for overtime, night work, and work on public holidays and extra costs of express freight or other rapid means of transportation which are necessary to make temporary repairs and to expedite the permanent repair or replacement of the covered property when damaged by an peril insured, but only to the extent such is necessary to continue as nearly as practicable the normal operation of the work in progress.

> (2) Extra expenses, which means the reasonable and necessary excess costs incurred during the period of restoration or repair of the damaged property that are over and above the total costs that would normally have been incurred during the same period of time had no loss or damage occurred for the purpose of continuing as nearly as practicable the scheduled progress of undamaged work.

> Any costs incurred hereunder shall be subject to the deductible applicable to the cause of loss that necessitates such costs. In the event that the amount of physical loss is less than the applicable deductible, the Company shall not accept a claim for, nor be liable for the excess costs as covered herein.

Doc. 201-1 at 16-17.

Zurich raises five arguments as to why First Solar's evidence was insufficient to meet the "elements" of each provision. Doc. 215-1 at 2, 3. Those arguments ignore evidence and misinterpret the policy.

First, Zurich argues that First Solar failed to present evidence that its "expedited expenses" were for overtime, night work, work on public holidays, or express freight. Doc. 215-1 at 3. However, First Solar provided testimony and documentation to support its claims that overtime work was completed and that the overtime was reasonable and necessary to maintain the scheduled progress of work. *See, e.g.*, Doc. 210 at 78:23-80:20 (explaining that Exhibit P-163 reflects "all general conditions, per diem, overtime and double-time costs required" to complete the work on the scheduled dates).

Second, Zurich argues that First Solar failed to prove the "period of restoration or repair" and is, thus, not entitled to extra expenses. Doc. 215-1 at 4. But Ted Garrett, the project manager, was asked if the damages were "incurred during the period of restoration and repair on this project?" and he responded "absolutely." Doc. 210 at 179:18-20.

Third, Zurich argues that First Solar failed to prove the amount of costs that "would normally have been incurred." Doc. 215-1 at 4. However, Garrett testified that the expenses were "over and above" the normal costs. Docs. 210 at 179:21-24.

Fourth, Zurich argues that First Solar did not prove it was entitled to extra expenses because First Solar's expenses were not incurred to repair or replace "damaged property," but rather to shift the work schedule so that First Solar could meet its overall deadline. Doc. 215-1 at 4. Zurich does not explain why the policy's extra expense provision would be limited to expenses incurred for direct repair or replacement of damaged property, and the policy's language does not support that conclusion. As First Solar states, the policy already covers "actual cost to repair or replace damaged property" under the provision "Insuring Agreement A." *Id.* at 13, 26. The extra expenses provision extends coverage to "reasonable and necessary excess costs" incurred "for the purpose of continuing as nearly as practicable the scheduled progress of undamaged work." Doc. 201 at 16-17. First Solar presented testimony and documentary evidence that it incurred such expenses.

Fifth, Zurich argues that a portion of First Solar's extra expenses were caused by COVID-19 rather than physical damage to the property and were, therefore, not covered by the policy. Doc. 215-1 at 3-4. However, even if some of its expenses occurred during the COVID-19 pandemic, they were *caused* by flood damage. Doc. 200-2 ¶¶ 5-6. Zurich points to no policy language that excludes such damages from coverage because they happened to occur during a pandemic. And even if COVID-19-related expenses were excluded, Zurich waived that argument by failing to raise it in its motion for judgment as a matter of law. *See Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 717 n.3 (11th Cir. 2002) ("If a party asserts new grounds in its renewed motion for judgment as a matter of law that it did not assert in its initial motion for judgment as a matter of law, a court may not rely on the new grounds to set aside the jury's verdict.")

*2. First Solar's claims were not time-barred by the policy, and Zurich waived the policy's flood deductible.*

Zurich also makes two arguments that the Court has already considered and rejected.  First, Zurich argues that First Solar's claim was untimely because the policy imposed a two-year suit limitation.  Doc. 215 at 5-13.  Second, Zurich argues that it waived the policy's $2.5 million deductible for flood claims.  Doc. 215 at 10-13.  The Court rejects those arguments for the same reasons it did previously.  *See* Docs. 116 at 44; 177 at 4-5; 117-1 at 14.

*3. First Solar presented sufficient evidence that it was entitled to pre-judgment interest on unliquidated damages.*

Zurich also argues that it is entitled to judgment as a matter of law because the evidence did not support the jury's award of pre-judgment interest on First Solar's unliquidated damages.  Doc. 215-1 at 13.

While the Court determines pre-judgment interest on liquidated damages as a matter of law, pre-judgment interest on unliquidated damages is a jury issue and the jury, in its discretion, may award pre-judgment interest.  O.C.G.A. § 7-4-15; O.C.G.A. § 13-6-13; *Braner v. Southern Trust Ins. Co.*, 255 Ga. 117, 119, 335 S.E.2d 547, 550 (1985).  Here, the jury was asked to determine whether pre-judgment interest should be awarded on the unliquidated damages and when that interest accrued.  Doc. 195 at 4.  The jury found that First Solar was entitled to pre-judgment interest, and it found that the interest accrued on March 22, 2021.  *Id.*  Zurich argues that the evidence did not support an award of pre-judgment interest because there was insufficient evidence of an accrual date.  Doc. 215-1 at 13.

Zurich relies on *Malta Construction Co. v. Henningson, Durham & Richardson*, 716 F. Supp. 1466 (N.D. Ga 1989), to support its argument.  Doc. 215-1 at 13.  However, *Malta* is factually distinguishable from this action.  In *Malta*, the Northern District ruled that the evidence did not support an award of pre-judgment interest because the damages flowed from losses that occurred after the time of the breach and, thus, were not "ascertainable at the time of breach."  *Malta*, 716 F. Supp. at 1469.  Here, First Solar presented to the jury Zurich's admission that "it completed its analysis of the claimed damages…by March 22, 2021."  Doc. 211 at 138:8-12.  Unlike *Malta*, there was sufficient evidence that damages were ascertainable by March 22.

Zurich next argues that pre-judgment interest could not have accrued by March 22, 2021 because "[a]s the trial evidence showed…First Solar withheld the bulk of such requested evidence."  Doc. 215-1 at 14.  That is simply not true.

A review of the claims process reveals that Zurich's rejection of First Solar's unverified damages was not about the sufficiency of the evidence—it was about coverage.  The claims process is best summarized by the parties' stipulated facts:

> 8. Scott Klaben was assigned as the Zurich adjuster to handle each of First Solar's claims.  Mr. Klaben is no longer employed by Zurich and is not available to testify.
>
> 9. John Shaw, an employee of Marsh, First Solar's broker, was also involved in the claims process.
>
> 10. Zurich retained a third-party building consultant, David Skinner of MKA, to analyze and verify First Solar's claimed losses.
>
> 11. First Solar submitted claim information through and with the assistance of Marsh FACS, First Solar's forensic accountant.
>
> 12. Zurich investigated First Solar's claims and corresponded with First Solar regarding its claims.

    13. Until March 2021, Zurich continued to adjust First Solar's claims. Marsh continued to submit damages information to Zurich and its building and damages consultant, MKA. MKA continued to consider First Solar's losses into February 2021, ultimately verifying $4,917,303.00.

    14. First Solar ultimately claimed $10,746,341.29 under the policy, broken down as follows:

        $2,680,963.49 for the December 13, 2019 Rain Event

        $1,145,393.58 for the February 5, 2020 Rain Event

        $3,856,952.36 for the February 13, 2020 Rain Event

        $1,705,117.76 for the March 3, 2020 Rain Event

        $1,357,914.10 for the April 18, 2020 Rain Event

    15. MKA verified and Zurich does not dispute that First Solar incurred the following damages and losses:

        December 13, 2019 Rain Event – $1,477,618

        February 5, 2020 Rain Event – $418,746

        February 13, 2020 Rain Event – $1,947,934

        March 3, 2020 Rain Event – $496,850

        April 18, 2020 Rain Event – $576,155

Doc. 200-2 ¶¶ 8-15. The claims adjustment process was complex and lengthy. First Solar produced voluminous documentary evidence of its claimed damages.

    As of February 2021, Zurich had what it needed to verify coverage for $4,917,303.00 of First Solar's damages. *Id.* ¶ 13. There was evidence that Zurich rejected the remaining "unverified" damages because Zurich believed they were not covered by the policy. *See, e.g.*, Doc. 201-7 at 2 (questioning $80,025.70 because the "[a]mount claimed [was] based on lost days not additional work performed."). And again, Zurich admitted that it completed the claims process as of March 22, 2021. Doc.

211 at 138:8-12.  At that point, First Solar had provided sufficient evidence for Zurich to determine that 1) $4,917,303.00 in damages were verified, and 2) the remaining damages were not recoverable, not because there was insufficient proof, but because those damages were not covered by the policy.  There was, therefore, sufficient evidence for the jury to determine that First Solar's damages were ascertainable and that the pre-judgment interest accrued, on March 22, 2021.

Accordingly, Zurich's motion for judgment as a matter of law (Doc. 215) is **DENIED**.

**B. Motion for a New Trial**

Zurich argues, in the alternative, that it is entitled to a new trial under Rule 59(a) because First Solar violated its Rule 26(a) disclosure obligations by failing to produce documents from its Project Management Information Management System ("PIMS"). Doc. 215 at 15-20.

The Court already addressed this argument in its Order denying Zurich's motion for sanctions (Doc. 208), attached as "Exhibit A."  As the Court stated in that order, Zurich's objection to the alleged failure to disclose is untimely because it waited to raise the issue until the fourth day of trial, well after the close of discovery and after the jury had heard testimony about PIMS.  *See McBride v. Carnival Corp.*, 102 F.4th 1194, 1203 (11th Cir. 2024) ("the general rule [is] that a timely objection is necessary to bring to the trial court's attention alleged errors in the conduct of the trial." (quoting *Jenkins v. Gen. Motors Corp.*, 446 F.2d 377, 383 (5th Cir. 1971)).

Moreover, PIMS is not a document or a collection of documents; it is a database in which documents are stored.  Zurich argues that it did not have "proof of payment"

documents that were stored in PIMS.  Doc. 225 at 10.  However, First Solar did not rely upon those documents at trial.  Further, while Zurich claims that proof of payment was "critical evidence," Zurich was able to verify a portion of First Solar's damages without those documents in March 2021.  And, again, Zurich did not deny the rest of First Solar's claims because of a lack of proof of payment—it denied First Solar's claims because it did not believe they were covered by the policy.  In sum, Zurich fails to establish that First Solar's alleged failure to disclose documents caused a miscarriage of justice.

Accordingly, Zurich's motion for a new trial (Doc. 215) is **DENIED**.

## C. Motion to Amend the Judgment

Finally, Zurich moves to amend the Judgment because (1) the jury awarded First Solar for "design changes" that were excluded from the policy, and (2) an award on pre-judgment interest for unliquidated damages was improper.[1]  Doc. 216.

*1. Design changes*

Zurich argues that damages awarded to First Solar for adding a diversion basin to its construction site were not covered by the policy because they were "design changes" that were excluded by the policy's "cost of making good" exclusion.  Doc. 216-1 at 2-3.  However, as Zurich admitted, it did not raise that argument at any point before trial.  Doc. 212 at 726:16-20 ("THE COURT:…Mr. Morris, at what point has Zurich put at

---

[1] Zurich agreed at trial that First Solar would draft the judgment and confer with Zurich on the completed product.  Doc. 211 at 213:4-214:18.  During trial, the parties agreed that judgment would include First Solar's damages plus any pre-judgment interest the jury and the Court awarded.  *Id.* at 213:16-214:3.  After the jury's verdict, Zurich agreed that judgment should be entered in the amounts awarded by the jury.  Doc. 212 at 203:16-21.  Zurich then approved the proposed judgment before First Solar provided it to the Court, and the Court adopted that judgment.  Doc. 204:20-21.  While Zurich was careful to state that it reserved its right to appeal substantive issues, it did not object to the amount of the judgment before it was entered despite having ample opportunity to do so.

issue the affirmative defense of any exclusion?  MR. MORRIS: I don't know that we have, Your Honor.").  Zurich, thus, waived any argument that First Solar's damages for diversion basins were excluded from the policy.  *See Reserve Life Ins. Co. v. Ayers*, 217 Ga. 206, 213, 121 S.E.2d 649, 654 (1961) ("This court has repeatedly held that the burden was upon the insurer to prove an affirmative defense…that a loss apparently covered by the policy came within an exclusionary clause contained in the policy."); *See also Moon v. Cincinnati Ins. Co.*, 920 F. Supp. 2d 1301, 1305 (N.D. Ga 2013) (ruling that the insurer "failed to properly reserve its rights [to assert additional defenses] when it denied [the insured's] claims on [specific grounds] and refused to undertake a defense."  (alterations in original) (Quoting *Hoover v. Maxum Indemnity Co.*, 291 Ga. 402, 405, 730 S.E.2d 413, 418 (2012)).

In any event, First Solar presented testimony that the diversion basins fell into the policy's coverage extension for extra expenses.  Specifically, Garrett testified that the basins were temporary measures to remove water from the flooded construction zones to complete the construction on time.  *See, e.g.*, Doc. 210 at 146:18-21 ("So, this document is a change order to Peed Brothers for putting in a temporary diversion system to keep…the previous rain events [from] impacting our work in Block 6.").  Thus, the jury's award of damages for the diversion basins was not a "manifest error[ ] of law or fact."  *Arthur*, 500 F.3d at 1343.

### 2. Pre-judgment interest on unliquidated damages

Finally, Zurich again argues that it did not owe pre-judgment interest on First Solar's unliquidated damages.  Doc. 216-1 at 7.  A motion to amend judgment is not an

appropriate forum to "relitigate old matters." *Arthur*, 500 F.3d at 1343. And even if it were, Zurich's argument is rejected for the same reasons stated above.

Accordingly, Zurich's motion to amend the judgment is **DENIED**.

### IV. CONCLUSION

Zurich's motions for judgment as a matter of law (Doc. 215), its motion for a new trial (Doc. 215), and its motion to amend the judgment (Doc. 216) are **DENIED**.

**SO ORDERED**, this 17th day of April, 2025.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT
